<u>**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**</u>

| | |
|---|---|
| Deynaria Perez, | : |
| | : |
| Petitioner | : |
| | : |
| v. | : No. 779 C.D. 2016 |
| | : Submitted: October 14, 2016 |
| Workers' Compensation Appeal | : |
| Board (GMRI, Inc.), | : |
| | : |
| Respondent | : |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                    HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE JAMES GARDNER COLINS, Senior Judge

<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  November 21, 2016**

Deynaria Perez (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision and order of a Workers' Compensation Judge (WCJ) denying her claim and penalty petitions.  For the reasons set forth below, we affirm.

Claimant worked for GMRI, Inc. (Employer) as a food preparation worker in its Lancaster, Pennsylvania Red Lobster restaurant for approximately fourteen years.  Claimant was diagnosed in 2012 as having bilateral carpal tunnel syndrome and bilateral de Quervain's tenosynovitis.  (11/3/14 Hearing Transcript (H.T.) at 7-9, Reproduced Record (R.R.) at 10a-12a; Claimant Ex. 4 Claimant Medical Records, R.R. at 120a-121a.)  On February 21, 2013, Claimant had carpal

tunnel release surgery on her right hand and wrist and was off work for several weeks for that surgery. (WCJ Decision Finding of Fact (F.F.) ¶¶3e, 18; Claimant Ex. 5 Claimant Medical Records, R.R. at 126a; 4/13/15 H.T. at 15-17, R.R. at 65a-67a.) On October 1, 2013, Claimant had carpal tunnel release surgery on her left hand and wrist and was off work for several weeks for that surgery. (WCJ Decision F.F. ¶¶3e, 18; Claimant Ex. 5 Claimant Medical Records, R.R. at 125a; 4/13/15 H.T. at 15-17, R.R. at 65a-67a.) In October 2013, Claimant filed a claim for short term disability benefits under Employer's benefit plan for the time she was off for her surgery. (WCJ Decision F.F. ¶¶3d, 6, 18; Claimant Ex. 2 Disability Form, R.R. at 115a.) The disability benefits form that Claimant filed stated that she was off work for carpal tunnel surgery but did not attribute Claimant's condition or surgery to her work. (Claimant Ex. 2 Disability Form, R.R. at 115a.) After her recovery from each of these surgeries, Claimant returned to her regular work duties. (WCJ Decision F.F. ¶¶2i, 2j, 3f, 18; 11/3/14 H.T. at 17, 22, R.R. at 20a, 25a; 4/13/15 H.T. at 15-18, R.R. at 65a-68a.)

In February 2014, Claimant left work for a vacation out of the country, but did not return when her approved leave ended because of a family emergency. (WCJ Decision F.F. ¶¶2k, 3f, 18; 11/3/14 H.T. at 23-24, R.R. at 26a-27a; 4/13/15 H.T. at 18-19, R.R. at 68a-69a.) When Claimant came back in April 2014, she asked to return to her regular job, but Employer had filled her position as a result of her extended absence and did not have a job opening for her. (WCJ Decision F.F. ¶¶2l, 3f, 18; 11/3/14 H.T. at 24-25, R.R. at 27a-28a; 4/13/15 H.T. at 19-21, R.R. at 69a-71a.) Claimant found full-time work with a new employer by September 2014 and received unemployment compensation until she started work. (11/3/14 H.T. at 25-29, 44-45, R.R. at 28a-32a, 47a-48a.)

On September 18, 2014, Claimant filed a claim petition seeking disability benefits under the Workers' Compensation Act (the Act)[1] for the period beginning February 19, 2014, asserting that she suffered from carpal tunnel syndrome and de Quervain's tenosynovitis caused by her work for Employer and stating that her date of injury was February 19, 2014, the last day that she worked for Employer. Claimant also filed a penalty petition asserting that Employer failed to timely issue a Notice of Compensation Payable or Notice of Compensation Denial, failed to pay compensation in violation of the Act and failed to promptly investigate Claimant's injury. Employer timely answered both petitions, denying that these conditions were work-related and asserting that Claimant had failed to give notice of any work-related injury. Employer also issued a Notice of Compensation Denial denying compensation on those two grounds.

The WCJ held two days of evidentiary hearings at which Claimant, Claimant's daughter and Employer's general manager testified, and also received expert reports of a physician retained by Claimant's counsel who examined Claimant and a physician who examined Claimant on behalf of Employer.[2] Claimant testified that her job duties with Employer included making bread with her hands as much as eight to ten hours a day, cutting lobsters with scissors and stirring sauces. (11/3/14 H.T. at 10-11, R.R. at 13a-14a.) According to Claimant, her work hours varied and were 30 to 40 hours per week in 2012 and 27 to 35 hours per week in 2013. (*Id.* at 34-35, R.R. at 37a-38a.) Claimant testified that in the summer of 2012, she began having pain in her wrists and hands that was worse

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

[2] The parties submitted medical reports rather than depositions because Claimant's disability claim was for a period of 52 weeks or less. (4/13/15 H.T. at 51, R.R. at 101a.) *See* Section 422(c) of the Act, added by the Act of June 26, 1919, P.L. 642, *as amended*, 77 P.S. § 835.

3

when she was working, that she went to her family doctor and a specialist, and that she told one of her managers that "the doctor had told me that I had carpal tunnel in both hands due to repetitive work." (*Id.* at 7-9, 11, R.R. at 10a-12a, 14a.) Claimant also testified that she asked that manager for workers' compensation information when she had the February 2013 surgery and asked the general manager for workers' compensation forms for the October 2013 surgery, and that she told both the manager and general manager that she had continuing pain after her October 2013 surgery. (*Id.* at 12, 16, 18-20, 22-23, R.R. at 15a, 19a, 21a-23a, 25a-26a.) Claimant's daughter testified that when Claimant asked for time off for the February 2013 surgery, she and Claimant told Claimant's manager that Claimant's wrist problem and surgery were caused by Claimant's food preparation work. (4/13/15 H.T. at 37-40, R.R. at 87a-90a.)

Employer's general manager testified that Claimant's job duties involved the preparation of 60 to 80 different items, that the work that she did varied, and that Claimant was not regularly assigned to make bread and only performed that work to fill in for the baker when needed. (4/13/15 H.T. at 7-9, R.R. at 57a-59a.) Employer's general manager testified that Claimant never reported to him that she suffered from a work-related injury or that her surgeries were work-related, that Claimant never sought any change in her job duties or complained of difficulty doing her job, and that Claimant sought to resume her regular job duties when she returned from her non-medical absence in 2014. (*Id.* at 11, 17-20, R.R. at 61a, 67a-70a.) He further testified that Employer's managers are required to report to him any work-related injury that an employee reports to them, that none of the managers reported that Claimant had notified them of any work-related injury and that the only document that Employer had in its files

4

concerning Claimant's hand and wrist problems or surgery was the short term disability form. (*Id.* at 11-15, R.R. at 61a-65a; Employer Ex. 1 Claimant Personnel File Medical Notes, R.R. at 132a-138a.) Employer introduced in evidence a record showing that Claimant worked 11.32 to 36.53 hours per week in 2012 and 11.84 to 44.80 hours per week in 2013, with the majority of weeks in the two-year period under 35 hours. (Employer Ex. 2, R.R. at 139a-140a.)

Claimant's expert, Dr. Katolik, opined that Claimant suffered from right side carpal tunnel syndrome and right side de Quervain's tenosynovitis. (Claimant Ex. 3 Katolik Expert Report, R.R. at 118a.) Dr. Katolik opined that Claimant's de Quervain's tenosynovitis was caused by her work for Employer, based on a history that her job had a high load of repetitive work and that she typically worked more than 40 hours per week. (*Id.*, R.R. at 116a, 118a.) Dr. Katolik's report did not set forth any opinion on whether Claimant's carpal tunnel syndrome or surgeries were work-related. (*Id.*, R.R. at 118a-119a.) Employer's expert, Dr. DiBenedetto, opined that Claimant had bilateral carpal tunnel syndrome from which she had recovered and that she did not have de Quervain's tenosynovitis. (Employer Ex. 3 DiBenedetto Expert Report, R.R. at 143a.) Dr. DiBenedetto concluded that Claimant was able to work without restrictions, but did not express any opinion on whether her carpal tunnel syndrome was work-related. (*Id.*) Although Claimant testified before the WCJ that the termination of her employment was unrelated to any medical condition (11/3/14 H.T. at 23-25, R.R. at 26a-28a), both experts stated in their reports that Claimant told them that she was fired by Employer because of her hand and wrist problems. (Claimant Ex. 3 Katolik Expert Report, R.R. at 117a; Employer Ex. 3 DiBenedetto Expert Report, R.R. at 141a.)

5

On August 21, 2015, the WCJ issued a decision denying Claimant's claim and penalty petitions. The WCJ found the testimony of Employer's general manager credible and found the testimony of Claimant and her daughter not credible. (WCJ Decision F.F. ¶¶16-18.) The WCJ specifically rejected Claimant's and her daughter's testimony that Claimant reported a work injury and found that Claimant never communicated to Employer that her wrist and hand problems or carpal tunnel surgery might be work-related until the Claim Petition was filed on September 18, 2014. (*Id.* F.F. ¶¶16-18, 22.) The WCJ also rejected the opinion of Dr. Katolik as not credible and found that Claimant failed to meet her burden of proving that her injury was work related. (*Id.* F.F. ¶¶20, 23, Conclusion of Law ¶3.) Claimant appealed, and on April 13, 2016, the Board affirmed the WCJ Decision on the ground that Claimant did not give notice of a work-related injury within 120 days as required by Sections 311 and 312 of the Act, 77 P.S. §§ 631, 632. This appeal followed.[3]

Section 311 of the Act provides that unless the employer has actual knowledge of the occurrence of the work-related injury, the claimant must provide notice to the employer within 120 days of either the date of the injury or, if the claimant lacks knowledge of the nature the injury and its cause, the date by which the claimant knew or should have known of the injury and its possible relationship to her employment. 77 P.S. § 631. This notice must "inform the employer that a certain employe received an injury, described in ordinary language, in the course

---

[3] Our review is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence or whether constitutional rights or Board procedures were violated. *Penske Logistics v. Workers' Compensation Appeal Board (Troxel)*, 132 A.3d 1029, 1034 n.5 (Pa. Cmwlth. 2015).

6

of his employment on or about a specified time, at or near a place specified." 77 P.S. § 632. If the claimant fails to provide the notice required by Sections 311 and 312 of the Act, she is barred from receiving compensation. 77 P.S. § 631 ("unless such notice be given within one hundred and twenty days …, no compensation shall be allowed"); *Gentex Corp. v. Workers' Compensation Appeal Board (Morack)*, 23 A.3d 528, 534 (Pa. 2011); *Penske Logistics v. Workers' Compensation Appeal Board (Troxel)*, 132 A.3d 1029, 1035 (Pa. Cmwlth. 2015). The claimant bears the burden of showing adequate notice was given to the employer within 120 days. *Gentex Corp.*, 23 A.3d at 534; *Penske Logistics*, 132 A.3d at 1037; *Kocher's IGA v. Workers' Compensation Appeal Board (Dietrich)*, 729 A.2d 145, 147 (Pa. Cmwlth. 1999). Whether the required notice was given is a fact-intensive inquiry requiring deference to the WCJ's determinations as fact-finder. *Gentex Corp.*, 23 A.3d at 534 & n.10, 537; *Kocher's IGA*, 729 A.2d at 147.

Where, as here, the injury is claimed to have resulted from the repetitive, cumulative effects of the claimant's work, the date of injury is the last day that the claimant worked for the employer. *City of Philadelphia v. Workers' Compensation Appeal Board (Williams)*, 851 A.2d 838, 847-49 (Pa. 2004) (120-day notice period for work-related carpal tunnel syndrome ran from last day of employment). Although Section 311 delays the 120-notice period where the claimant is unaware that her injury could be work-related, that discovery rule is inapplicable in this case because Claimant testified that she believed as early as 2012 and 2013 that her condition was caused by her work for Employer. (11/3/14 H.T. at 9, 11, 17-18, 22, R.R. at 12a, 14a, 20a-21a, 25a.) Claimant was therefore required to show that she gave Employer notice that she had suffered a work-related injury no later than 120 days after February 19, 2014, the last day that she

7

worked for Employer. Claimant's claim and penalty petitions were not filed until September 18, 2014, far beyond that 120-day period.

Claimant argues that she proved that she gave Employer the notice required by Sections 311 and 312 before the termination of her employment. We do not agree. Claimant and her daughter testified that Claimant reported to Employer's managers in 2012 and 2013 that she had been diagnosed with carpal tunnel syndrome caused by her work and that in 2013, Claimant reported that she had pain while working and requested workers' compensation information and forms for her condition and surgeries. The WCJ, however, found that this testimony was not credible.

Determination of the credibility of witnesses is the prerogative of the WCJ, not the role of the Board or this Court. *Furnari v. Workers' Compensation Appeal Board (Temple Inland)*, 90 A.3d 53, 59-60, 70 (Pa. Cmwlth. 2014); *Stalworth v. Workers' Compensation Appeal Board (County of Delaware)*, 815 A.2d 23, 29 (Pa. Cmwlth. 2002). The WCJ has exclusive province over questions of credibility and evidentiary weight, and may accept or reject the testimony of any witness in whole or in part, even if it is uncontradicted. *Furnari*, 90 A.3d at 59, 70; *Stalworth*, 815 A.2d at 29; *Kocher's IGA*, 729 A.2d at 147; *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155-56 (Pa. Cmwlth. 1998).

> [N]either the Board nor the Court may reweigh the WCJ's credibility determinations. … Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal.

*Furnari*, 90 A.3d at 70.

8

The WCJ's credibility determinations here were neither arbitrary nor capricious. The WCJ had the opportunity to observe the demeanor of Claimant and her daughter, as both testified before the WCJ, and his assessment of their demeanor was one of the bases of his rejection of their testimony. (WCJ Decision F.F. ¶¶16-17.) Where, as here, there is conflicting testimony and all witnesses on that issue testified in person before the WCJ, the WCJ may properly base his credibility determination upon the demeanor of the witnesses and need have no further basis for rejecting a witness's testimony. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052-53 (Pa. 2003); *Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 77 (Pa. Cmwlth. 2012). In addition, the WCJ explained that Claimant and her daughter were not credible because their testimony was inconsistent with Claimant's behavior at the time and the documentary evidence and was contradicted by the credible testimony of Employer's witness. (WCJ Decision F.F. ¶¶16-18.)

Claimant thus showed only that she told Employer on two occasions in 2013 that she needed time off for surgery and that her short term disability form received by Employer in October 2013 stated that the surgeries were carpal tunnel release surgeries. This is not sufficient notice under Sections 311 and 312 of the Act. Section 312 requires that the claimant give the employer notice not merely of an injury or medical condition but that the injury or condition was "in the course of his employment." 77 P.S. § 632. This requirement is satisfied where the claimant has told the employer that she experienced a physical problem at work that affects her ability to do her job and that the condition might be work-related. *Gentex Corp.*, 23 A.3d at 530, 537-38 (adequate notice of work-related injury was shown

where claimant notified employer that she suffered pain in her hands at work that prevented her from doing her job and, after initially reporting that her condition was not work related, told employer that her problems were work related); *Kocher's IGA*, 729 A.2d at 149 (notice of work-related injury was sufficient where claimant notified employer that she suffered arm or wrist pain while working, that she could not work because of this condition and that she was unsure whether the condition was work related).[4] Here, however, the WCJ found that Claimant never told Employer that she had pain or difficulty doing her job and never told Employer that her condition might be work-related. (WCJ Decision F.F. ¶¶3c, 3f, 18.) Because Claimant did not show that she gave Employer any notice that her medical condition arose at work, that it affected or was affected by her work, or that she thought that it might be work-related, Claimant did not satisfy her burden of showing that she timely gave notice of a work-related injury.

Moreover, Claimant also failed to prove that her injury was work related. Where causation is not obvious, the claimant must prove the connection between her injury and her work by credible, competent medical opinion. *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 498 A.2d 800, 802 (Pa. 1985); *Penske Logistics*, 132 A.3d at 1038; *Taulton v. Workers' Compensation Appeal Board (USX Corp.)*, 713 A.2d 142, 145 (Pa. Cmwlth. 1998).

---

[4] Contrary to Claimant's contention, *State Workmen's Insurance Fund v. Workmen's Compensation Appeal Board (Wagner)*, 677 A.2d 892 (Pa. Cmwlth. 1996) and *Body Shop v. Workers' Compensation Appeal Board (Schanz)*, 720 A.2d 795 (Pa. Cmwlth. 1998) do not hold that notice of injury is sufficient without any notice that the injury is work related. In *Wagner*, when the claimant reported her medical problem to her employer's president, she "told him she thought the disease was related to her employment." 677 A.2d at 894. In *Body Shop*, there was no dispute that the Claimant gave notice of a work-related back injury and the employer in fact issued a Notice of Compensation Payable; the only issue as to the adequacy of the notice concerned the description of the injury. 720 A.2d at 796, 799.

Causation of a gradual, cumulative injury is not obvious and must be shown by medical evidence. *Calcara v. Workers' Compensation Appeal Board (St. Joseph Hospital)*, 706 A.2d 1286, 1289 (Pa. Cmwlth. 1998); *Crenshaw v. Workmen's Compensation Appeal Board (Hussey Copper)*, 645 A.2d 957, 962-63 & n.9 (Pa. Cmwlth. 1994). Claimant was therefore required to prove by credible, competent medical evidence that her hand and wrist injury was caused by her work for Employer.

While Claimant's medical expert, Dr. Katolik, opined that one of Claimant's conditions was work-related, the WCJ found his causation opinion not credible. Where the WCJ finds that the medical evidence of causation is not credible, the claimant cannot meet her burden of proving that her injury is work related and denial of the claim petition is required. *Stalworth*, 815 A.2d at 29-30; *Taulton*, 713 A.2d at 145. In such a case, "[t]he effect is as if Claimant produced no medical evidence at all." *Taulton*, 713 A.2d at 145. As discussed above, credibility determinations are exclusively committed to the WCJ, as the factfinder. The WCJ explained that he rejected Dr. Katolik's causation opinion because it was based on information concerning Claimant's work hours and duties that was inconsistent with the evidence in the record. (WCJ Decision F.F. ¶20.) The WCJ's rejection of Claimant's expert was adequately explained and was not arbitrary or capricious.

Given the WCJ's credibility determinations, Claimant could not meet her burden of proof and denial of the claim and penalty petitions was required. Accordingly, we affirm the Board's order.

_____
JAMES GARDNER COLINS, Senior Judge

11

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Deynaria Perez,                                    :
                                                   :
                          Petitioner               :
                                                   :
              v.                                   :    No. 779 C.D. 2016
                                                   :
Workers' Compensation Appeal                       :
Board (GMRI, Inc.),                                :
                                                   :
                          Respondent               :

# **O R D E R**

AND NOW, this 21st day of November, 2016, the order of the Workers' Compensation Appeal Board in the above matter is AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge