IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tammi Burch,                          :
                    Petitioner        :
                                      :
        v.                            :   No. 575 C.D. 2017
                                      :   Submitted: December 1, 2017
Workers' Compensation Appeal          :
Board (Graham Packaging),             :
                    Respondent        :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE J. WESLEY OLER, Jr., Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                         FILED: March 1, 2018

        Tammi Burch (Claimant) petitions for review of an adjudication of the
Workers' Compensation Appeal Board (Board) denying her claim for benefits.  The
Board affirmed the determination of the Workers' Compensation Judge (WCJ) that
Claimant failed to give Graham Packaging (Employer) timely notice of her work
injury.   Claimant argues that text messages from a co-worker showed that
Employer's plant manager knew of Claimant's work injury and, thus, the WCJ erred.
We affirm.

        In 2011, Claimant began working as a quality assurance technician in
Employer's bottle manufacturing plant.  On June 3, 2013, Claimant filed a claim
petition under the Workers' Compensation Act (Act),[1] alleging that on January 28,
2013, she "hit her head on a low hanging vent causing [a] neck injur[y] and surgery."
Reproduced Record at 2a (R.R. __).  Employer denied liability, alleging it was not

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4; 2501-2708.

notified that her neck injury was work-related until June 4, 2013, which was untimely. Section 311 of the Act[2] requires notice to be given within 120 days of the injury, and Claimant did not meet this statutory deadline.

Before the WCJ, Claimant testified that on January 28, 2013, she was walking very fast when she hit an "air conveyor that is right at [her] height." Notes of Testimony (N.T.), 7/10/2013, at 10; R.R. 19a. It "smashed [her] forehead right at [her] hairline and [her] head flew back." *Id.* The day of the incident, she told three of her co-workers what happened: Finis Vincent, Cordella Roberts and Neal Knaub.[3] These three co-workers were her friends.

Claimant acknowledged that she needed to fill out an accident report, but she decided not to report the incident or inform her supervisor, Frank Sansosti. Claimant explained that Employer has a large clock at the plant that keeps a running tally of how long the plant has operated without a work accident. A full accident-free year entitles each employee to a payment of approximately $150. At the time of her injury, the plant had gone almost four years without an accident. Claimant

---

[2] It provides, in full:

> *Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer* within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given *within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed.* However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term "injury" in this section means, in cases of occupational disease, disability resulting from occupational disease.

77 P.S. §631 (emphasis added).

[3] The record incorrectly identifies him as "Neil Rob." Board Adjudication, 04/06/2017, at 3 n.2.

2

did not want to cause her co-workers to lose the bonus or be the employee "that brought [the clock] down to a zero." N.T., 7/10/2013, at 14; R.R. 23a.

On February 5, 2013, because of neck pain, Claimant saw her family physician. On February 10, 2013, she went to the emergency room because of her neck pain. Unable to return to work, Claimant began treatment with John Grandrimo, D.O., an orthopedic surgeon. On March 21, 2013, she underwent a cervical discectomy and fusion at C5-6 and C6-7. After the surgery, Claimant expected to return to work. However, she continued to experience pain.

Claimant told both her family doctor and Dr. Grandrimo that her injury was not work-related.[4] Instead, she claimed that she ran into a tree branch while chasing her dog in the yard. Claimant's medical bills were paid by her husband's health insurance program, and she received wage loss benefits under Employer's short-term disability plan.

Claimant testified about several text message exchanges she had with her co-workers. On February 15, 2013, Toby Keiser, the plant manager, sent Claimant a text message asking if her dog had caused the injury, to which Claimant responded that she "[r]an into something head first walking pretty fast and [her] head snapped back." R.R. 277a. Nevertheless, Claimant believed that Keiser knew her injury was work-related, based on text messages she received from Knaub. On March 4, 2013, she sent a text to Knaub asking, "[y]ou never told anyone the real story right?" R.R. 222a. He responded, "Toby [Keiser] knows." *Id*. Claimant asked, "who told him?" R.R. 223a. Knaub replied, "Cordella [Roberts], you told

---

[4] Claimant did tell Jennifer Kmiecinski, a physician's assistant, that her injury was work-related but she did not want it documented in her patient file. Kmiecinski presented testimony confirming that on February 5, 2013, Claimant stated that her injury was work-related, but asked that this not be included in her patient history. Kmiecinski complied with the request, believing it was Claimant's prerogative to determine what was included in her medical records.

3

her…told you not to tell anyone." *Id.* (ellipsis in original). Claimant responded, "she just told me this week that she hasn't said anything, what did Toby [Keiser] say?" R.R. 224a. Knaub stated, "[t]elling ya (sic), you gotta (sic) be careful with people." *Id.*

On May 5, 2013, Knaub and Claimant again exchanged text messages. Therein, Claimant expressed worries about insurance fraud because both her husband's health insurer and Employer's disability insurer had sent her questionnaires about the specifics of her injury. Claimant also noted that if she continued to claim that the injury was caused in her yard, the insurers may "make [her] go against [her] homeowner's insurance policy[.]" R.R. 251a. Claimant stated

> [had] I known at the beginning when I smashed my head in January how bad I hurt myself, I may have reported it, but I don't ever want to be the one to mess up the no accidents for [multiple] years!

R.R. 252a. She then stated, "I'm taking one for the team. Although you told me Toby [Keiser] knows the truth." R.R. 253a. Knaub responded that "[h]e is not 100% sure…but he has a feeling." *Id.* (ellipsis in original). Claimant then asked, "[w]hat makes you say that? What has he said?" *Id.* Knaub responded, "I gotta (sic) mow (sic) … don't worry about it." *Id.* (ellipsis in original).

On June 4, 2013, Claimant sent a text message to Keiser stating that her "claim has turned into a workman's [sic] comp[ensation] claim and [she's] hired an attorney." R.R. 292a.

Claimant presented the testimony of Knaub, who is a process engineer with Employer. He stated that he was not a supervisor to whom work accidents are reported. Knaub stated that he learned of her injury in February, when she

4

mentioned hurting her head at home. Sometime in March, she confided to him that the injury actually occurred at work.

Knaub testified about his March 4th text that "Toby [Keiser] knows." R.R. 222a. He explained that when texting back and forth, the recipient may send a text before the sender completes his message. The printout of their text messages showed that the conversation proceeded as follows:

> [Claimant:]  But like humpty dumpty they can put me back together again
>
> [Knaub:]  They are getting better with that…just hurry the hell up
>
> [Claimant:]  I will just have to be more cautious with the things I do
>
> [Claimant:]  You never told anyone the real story right?
>
> [Knaub:]  Start calling you dopey
>
> [Knaub:]  Toby [Keiser] knows
>
> [Claimant:]  If I knew how bad I hurt myself at the beginning I would have come forward, but I didn't want to be the one to screw up the safety record. Besides my insurance is awesome and everything is paid for
>
> [Claimant:]  ….who told him?
>
> [Claimant:]  They said the type of injury wouldn't have shown for a few weeks anyway
>
> [Knaub:]  Cordella [Roberts], you told her…told you not to tell anyone

R.R. 222a-23a. (ellipses in original). Knaub testified that his statement "Toby [Keiser] knows" was in response to Claimant's statement that she will have to be

5

more cautious when working, not in response to her question about telling anyone the "real story."

Knaub stated that his May 5th text that Keiser "is not 100% sure … but he has a feeling" was not based on anything other than Keiser "ask[ing] a couple of us on the floor did we know anything. I said I don't." N.T., 1/22/2014, at 24; R.R. 100a.

Claimant also presented the testimony of Dr. Grandrimo, who first examined Claimant on March 1, 2013. She told him that she ran headfirst into a tree. He found that Claimant had a large disc herniation at C5-6 and C6-7 and on March 21, 2013, he performed an anterior cervical discectomy fusion at C5-6 and C6-7. Dr. Grandrimo continued to treat Claimant after the surgery. On June 3, 2013, she informed him that she did not hit her head on a tree but on a vent at work. Dr. Grandrimo testified that regardless of where Claimant struck her head, she continues to need treatment for the injury. He has not released her to return to work.

Employer presented the testimony of Amanda Scarborough, its regional human resources manager. Scarborough is responsible for processing claims to Employer's workers' compensation insurance carrier. She first learned of Claimant's claim on June 4, 2013.

Scarborough testified that Employer has an incentive program that pays each employee $150 for each year the plant goes without a reportable injury. She stated that the program is meant to encourage workers to report unsafe conditions in order to prevent injuries. It is not intended to discourage employees from reporting injuries. They are required to report injuries; it is not discretionary.

Toby Keiser, the plant manager, testified. On February 7, 2013, Claimant came to his office and told him that she hit her head on a tree limb. He

6

responded, "so you did not hurt yourself at work?" N.T., 11/6/2013, at 8-9; R.R. 369a-70a. Claimant responded "no." *Id*. at 9; R.R. 370a.

Keiser confirmed that on June 4, 2013, Claimant sent him a text message stating that the claim had become a workers' compensation claim. He replied with "a question mark," but she did not respond. *Id*. at 10; R.R. 371a. Until he received that message, Keiser testified that he had no idea that Claimant's injury might be work-related. He testified that Roberts, Vincent and Knaub, who knew that Claimant's injury actually happened at work, never relayed that information to him.

Keiser addressed the incentive plan. He stated that if there are no accidents in a one-year period, the employees each receive $150. If one accident is reported, they each receive $75. If there are two or more accidents, they do not receive any bonus.

Finis Vincent testified by telephone. He explained that he left his position with Employer as a production supervisor in April 2013. He testified that he saw a bruise on Claimant's head sometime in January 2013, and asked about it. Claimant responded that she hit her head on a tree branch while gardening. Claimant did not tell him that her injury was work-related.

Frank Sansosti, a quality assurance manager, testified that he was Claimant's supervisor. He stated that Vincent had no supervisory role over Claimant, and Knaub was "not anybody's supervisor." N.T., 11/6/2013, at 15; R.R. 443a. Sansosti explained that sometime in January 2013, Claimant told him that "she was playing with her dog or walking the dog" when she "inadvertently struck a tree limb and hurt her neck…." *Id*. at 7-8; R.R. 435a-36a. He believed her injury to be non-work-related and not until June 4, 2013, did he learn otherwise.

7

Employer presented the testimony of Jonas Gopez, M.D., who is board-certified in neurological surgery and did an independent medical examination (IME) of Claimant on August 20, 2013. Claimant presented with a well-healed incision on her neck, with tenderness in the left cervical paraspinal muscles. He did not suggest that Claimant was fully recovered from the injury, noting that she continued to have left-sided neck, shoulder and arm pain and numbness in her fingers. Dr. Gopez questioned whether the injury was work-related because Claimant's medical records suggested that the injury occurred in her backyard.

The WCJ accepted Claimant's testimony that she fabricated a story about being injured at home, when the injury actually occurred in the course and scope of her employment. The WCJ found that the injury occurred on January 16, 2013, based on notations contained in Claimant's medical records.[5] The WCJ also found that Claimant established a loss of earnings as of March 21, 2013 (the date of her surgery) and remains unable to work as a result of her work injury.

Although the WCJ found that Claimant established a work-related disability, he denied her claim for benefits because she did not give Employer timely notice of her work injury. The WCJ found that Claimant did not tell Vincent that she was injured at work. The WCJ found that Claimant told Knaub that her injury was work-related, but this notice was inadequate because Knaub did not work for Employer in a supervisory capacity. Nor did Claimant present evidence that Knaub was an agent of Employer for purposes of receiving notice of work injuries. The WCJ also found Knaub did not tell Keiser that Claimant was injured at work; rather, Keiser learned that the injury was work-related on June 4, 2013. Claimant told her

---

[5] Although Claimant asserted the injury occurred on January 28, 2013, the WCJ found this was inconsistent with her medical records. The WCJ's finding that the injury occurred on January 16th has not been challenged by Claimant in her appeal to the Board or to this Court.

supervisor, Sansosti, that the injury was not work-related; and he did not learn otherwise until June 4, 2013. Based on these factual findings, the WCJ held that Claimant did not notify Employer of her work injury within 120 days of its occurrence, as mandated by Section 311 of the Act, 77 P.S. §631.

Claimant appealed to the Board, and it affirmed the WCJ. Claimant then petitioned for this Court's review.[6] On appeal, she raises one issue. She contends that the WCJ disregarded Claimant's evidence that she gave timely notice to Employer, based on Knaub's text messages that "Toby [Keiser] knows" and "[Keiser] is not 100% sure … but he has a feeling." R.R. 222a, 253a (ellipsis in original).

We begin with a review of the law. The claimant has the burden of proving timely notice of the work injury to the employer. *Gentex Corporation v. Workers' Compensation Appeal Board (Morack)*, 23 A.3d 528, 534 (Pa. 2011). Section 311 of the Act gives an employee 120 days from the date of the injury, or from the date the employee learns the injury is work-related, to give notice to the employer. 77 P.S. §631. Section 312 sets forth the contours of a satisfactory notice:

> The notice referred to in section 311 shall inform the employer that a certain employe received an injury, described in ordinary language, in the course of his employment on or about a specified time, at or near a place specified.

77 P.S. §632.

Whether an employee has given proper notice to her employer is a mixed question of fact and law. *Gentex Corporation*, 23 A.3d at 534. The WCJ, as

---

[6] Our review of an order of the Board determines whether the necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012).

fact finder, is entitled to deference over questions of credibility and evidentiary weight. *Kocher's IGA v. Workers' Compensation Appeal Board (Dietrich)*, 729 A.2d 145, 147 (Pa. Cmwlth. 1999). Over questions of law, this Court's review is plenary. *Scott v. Workers' Compensation Appeal Board (Ames True Temper, Inc.)*, 957 A.2d 800, 803 n.4 (Pa. Cmwlth. 2008).

Claimant argues that *Gahring v. Workers' Compensation Appeal Board (R and R Builders)*, 128 A.3d 375 (Pa. Cmwlth. 2015), supports her position that Employer had notice of her work injury. *Gahring* established that where an employer is notified of "the possibility [the injury] was work-related," Section 311 is satisfied. *Id*. at 382 (quoting *Gentex*, 23 A.3d at 536). Claimant asserts that Keiser knew of this possibility. Employer responds that *Gahring* is distinguishable.

In *Gahring*, the claimant sustained a work-related aggravation of his pre-existing back condition. The WCJ denied benefits because the claimant did not give notice of the aggravation within 120 days of the date of the injury.[7] The claimant complained of back pain to his employer, but he did not connect it to his job. On appeal, the Board acknowledged that the claimant's condition had worsened slowly over time and that the claimant had communicated that the "additional hours" he was working "were making his back worse." *Id.* at 379 (emphasis and citation omitted). Nevertheless, the Board held this did not constitute sufficient notice under the Act.

This Court reversed the Board. We explained that in cumulative trauma cases, the connection to work duties may not be obvious. "The claimant must notify

---

[7] When an aggravation injury is claimed, "each aggravation constitutes a new injury, so that notice within 120 days of the last injury (usually the last day of work) satisfies the Act's notice requirements." *Curran v. Workmen's Compensation Appeal Board (Maxwell Industries)*, 664 A.2d 667, 671 (Pa. Cmwlth. 1995).

10

an employer that he has an injury, but this can be done in 'collective communications.'" *Id*. at 381 (quoting *Gentex*, 23 A.3d at 538). The claimant "not only reported his increase in back pain but correlated this additional pain to the additional hours [the employer] was requiring him to work." *Id.* at 382. We held this constituted sufficient notice to the employer of "the possibility [the injury] was work-related." *Id*. (quoting *Gentex*, 23 A.3d at 536).

We agree with Employer that *Gahring* is inapposite. This case does not involve a cumulative trauma. Nor is this a case where the claimant did not know the injury was work-related. This case involves a singular trauma to Claimant's head and one that Claimant knew was work-related from the moment it happened.

Further, the record does not establish that Claimant gave timely notice to Keiser of the "possibility" that her injury was work-related. Claimant testified that she could not recall ever discussing her injury with Keiser face-to-face. The text messages show that Keiser asked Claimant if the injury was caused by her dog and she replied that she "[r]an into something head first walking pretty fast and [her] head snapped back." R.R. 277a. It was not until June 4, 2013, that she notified Keiser that her "claim has turned into a workman's [sic] comp[ensation] claim and [she's] hired an attorney." R.R. 292a.

On February 7, 2013, Keiser questioned Claimant about the nature of her injury. He specifically asked "so you did not hurt yourself at work?" N.T., 11/6/2013 at 8-9; R.R. 369a-70a. Claimant responded "no." *Id*. at 9; R.R. 370a. Keiser testified that he had no idea that Claimant had told her co-workers that she had hit her head on an air vent, and none of them informed him of that fact. The WCJ credited Keiser's testimony that his first notice of Claimant's injury was on June 4, 2013. WCJ Decision, 5/06/2016, at 35; Finding of Fact No. 65.

11

Nevertheless, Claimant asserts that Keiser learned the truth. Not from her, but perhaps from Knaub or Roberts.[8] Claimant's assertion is based on Knaub's text messages that "Toby [Keiser] knows" and "[Keiser] is not 100% sure…but he has a feeling." R.R. 222a, 253a (ellipses in original). Claimant asks the Court to conclude that Keiser's "feeling" demonstrated sufficient notice under the Act.

Knaub testified that "Toby [Keiser] knows" was not in response to whether anyone knew the "real story;" it was in response to Claimant's statement that she will have to be more cautious. N.T., 1/22/2014, at 15-16; R.R. 91a-92a. Knaub stated in his text message that Keiser "is not 100% sure … but he has a feeling" because Keiser had asked Claimant's co-workers if they knew anything about Claimant's injury. N.T., 01/22/2014, at 24; R.R. 100a. Knaub specifically denied telling Keiser that Claimant's injury occurred at work, and the WCJ credited this testimony. WCJ Decision at 23; Finding of Fact No. 40(p). The WCJ also accepted Knaub's explanation that "Toby [Keiser] knows" was in reference to Claimant's comment that she would have to be "more cautious" performing her work duties. *Id.* at 17; Finding of Fact No. 35(j).

The WCJ found, as fact, that Keiser did not know or receive a report that Claimant's injury was work-related before June 4, 2013. The WCJ's finding is based on credibility determinations that are beyond this Court's ability to set aside. Questions of credibility and evidentiary weight belong to the factfinder. *Kocher's IGA*, 729 A.2d at 147.

Claimant acted against her self-interest and in favor of what she believed to be the interest of her co-workers by not reporting the facts of her injury when it occurred. Employer may have influenced her decision with its bonus plan.

---

[8] Roberts was not called as a witness.

However, there is no escaping the plain terms of Section 311 of the Act. Accordingly, this Court affirms the Board's adjudication.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tammi Burch,                          :
                    Petitioner        :
                                      :
          v.                          :     No. 575 C.D. 2017
                                      :
Workers' Compensation Appeal          :
Board (Graham Packaging),             :
                    Respondent        :

# **O R D E R**

AND NOW, this 1st day of March, 2018, the order of the Workers' Compensation Appeal Board, dated April 6, 2017, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge